V. Dubrovay, at Al. Dennis Noonan. Arguing on behalf of the defendant's counsel, Mr. James P. Noonan. Arguing on behalf of the defendant's attorney, Mr. William P. Dwight. Mr. Noonan, you may proceed. Good morning, your honors. James Noonan, on behalf of the plaintiff's appellant. May it please the court. Yes. There's an empty chair to my left. It's Catherine Zinoff. She was unable to be present today. She's with race. We'll confer with her relative to the final disposition and she will review the oral arguments. Very good. Thank you. Thank you. By this appeal, this court is being asked to decide how the single re-filing rule under section 13-217 operates in a situation where the plaintiff is seeking to reflect on an installment note, such as a promissory note for mortgage foreclosure, like this case. Mr. Noonan, if Justice Zinoff is going to hear the oral argument, you have to speak a little into the microphone. Thank you. Sure. The secondary matter that's before the court today is the court is being asked to consider that when a case is dismissed with leave to reinstate, what limitations, if any, are there on the plaintiff's right to reinstate? I will begin with the single re-filing rule argument. Mortgage loans, which are a specie of installment contracts, are unique in the sense that they are a continuing obligation from the time the loan is made until the last payment is made. Illinois courts have recognized for over 100 years that a plaintiff, the holder of that note, is entitled to sue on any and all missed installments under the note. With or without an acceleration? Judge, yes. So the acceleration issue is unique to the foreclosure. It's not necessarily unique to the installment note issue. It's unique to a mortgage foreclosure. So, given the fact that the underlying instrument here is a promissory note that requires a payment stream over the course of, say, 30 years of a typical mortgage note. And not just one payment? Correct. That's right. The plaintiff is entitled to sue on any of those payments. If it elects to sue on a missed payment, if the first missed payment occurred, which occurs in this case in November of 2010, but the plaintiff is elected to sue on a different missed payment, the consequence of that is that that plaintiff cannot collect those costs. So is the affidavit filed by the defendant a red herring? Is the affidavit filed by the defendant a red herring insofar as what? Insofar as the fact that it alleges that there were no payments made? No. I would concede that the facts are correct, that the last payment that was made on this note was in November of 2010. Would it be, would the affidavit constitute an admission that the mortgage or defaulted on every installment stated in the affidavit? Not necessarily an admission, Judge, because the, we don't know what happened. We do know that the last payment that the mortgage were made was in November of 2010. But given that this is an installment contract, we contend that the Bank of New York was entitled to sue on a different payment. And let me give you the, so there's, the obvious factor is that it would avoid the application of a single refiling rule if the court determines that is what we contend, a different action. But also in the situation we have here, the evidence that a plaintiff needs to bring that suit is different than it would be for the earlier default. And for instance, if the case went to trial in November of, on the first court approach or based on a default in November of 2010, the plaintiff would have to prove that the payment was missed on that date and then would have to prove what was owed from that point going forward. In the 2017 foreclosure, where the plaintiff elected to sue on an April of 2013 default, it did not have to go back to 2010. It could elect, as it did, to sue on the note, sorry, on the missed payment that occurred in April of 2013. But you still alleged, or it was still alleged in the, I guess, petition, the action that was filed, that the entire amount was owed. No question about that, Judge. So the entire amount from that date of default, April of 2013. Well, but in your actual, I thought, lawsuit, you alleged the same amount that you had alleged in one, two, and three. So the principal amount, correct, the principal amount is the same. It never changed because, again, there was no payments made since November of 2010. Conceded that point. But if your default date is now the one you're choosing for the fourth action filed, the only thing that's changing is the default date. You still want the same amount of money. You're still the same people. How is it different? Judge, first of all, it's 30 months of interest that we're not collecting. Well, why are you collecting 30 months of principal? Because the principal hasn't changed. So because there's been no payments made, the principal amount of the loan has not changed. But the underlying promissory note entitles us to interest and costs. Those charges, those amounts, are not being sought in the last foreclosure because we've elected to proceed on the April of 2013 date. As your honors are aware, based on this recent Supreme Court decision, COBO, it's clear, it was sort of inferred in some of the appellate court decisions, that the standard is the standard one uses in the registry trial analysis. And that is whether or not the two actions are the same. We don't have – we have two cases which I think speak to that issue, none of them which are dispositive. The first case, which the trial court relied on, is the Wells Fargo v. Norris case. And I think a close reading of that case will bear out what I'm trying to say here. In that case, the plaintiff filed a first foreclosure based on a 2008 default. Then believed that there was a loan modification agreement that was breached, brought a second foreclosure based on a 2009 default. Then learned that there wasn't a modification agreement at all. Went back and filed a third action based on the original 2008 default. Mortgagor, in that case, contended that the case was fired by the simply filing board. The court disagreed. And the reason it disagreed, there was – if you look at paragraph 21 of that decision, both sides conceded that no payments were made. But the court said, you've elected to – the second action is different because you've alleged a different default. You've alleged a different default, regardless of the facts. But based upon the fact that there was a change in that there had been a – or there was supposed to have been a loan modification agreement. Right, but adhering on summary judgment, both sides conceded that never happened. It's conceded in the opinion that it never happened. So the default – the actual last payment occurred in January 2008 in all three actions. And the court determined, well, you've alleged – in the second action, you've alleged a different default. Therefore, the actions are not the same. And I contend that the Supreme Court's recent decision of First Miss West v. Cobo, it talks about allegations and the complaint. It doesn't talk about when actually the default occurred. And that is consistent with the principle that an owner of a promissory note is entitled to sue on any default it wants to, which is what Bank of New York did in this case. The other case I contend is relevant to these proceedings. Again, not directly on point, is the case we cited in our brief, Charleston v. Brown, which has not been addressed by – was not addressed by the trial court or by the appellees here. In that case, there was – that was an installment contract. And the issue in that case, using res judicata analysis – in other words, the same analysis that the Supreme Court said in Cobo has to be used on the single-week filing to determine that an earlier action based on a default was a different action than the current action, which is based on a later default. We contend that Norris and Charleston are consistent in that with the underlying principle that's over 100 years old that a plaintiff can sue on any default. It's what he alleges in the complaint that determines whether or not the actions are the same. And how does Cobo apply in your thoughts? So factually, Cobo is different. I think the Defendant's counsel was conceited because that was – in that case, all three actions allege the same default. Correct. So what I just point Your Honor to is that the court, in making its analysis, was looking at the allegations of the complaint, not what happened underneath the allegations of the complaint. And that's what we have in this case. The allegations of the 2017 action allege a different default date than the prior actions, and we contend that is enough to distinguish this case from those actions under the Richard Cobb analysis. And if we did that, if we decided that, doesn't that mean – well, aren't we then saying that your client or any client in your client's situation can file every month? They can file a new lawsuit every month? Judge, you know, unfortunately there's a case, a very old case, where the court acknowledges that you can do that. Why practically one would do that, I can't answer that question. I think it would be silly, but conceptually it can. It can sue every month on a new mispayment. So, I mean, again, it's unlike tort cases or unlike breach of employment agreements or something other kind of claim. The difference with an installment contract, like a promissory note here, is that the relationship between the parties continues past that breach. There are still obligations to each other. It's like a nuisance? Sorry? It's like a nuisance. A nuisance is a continuing tort? Yes, Judge. Or a continuing trespass? Yes. It would be like that in the sense that – and again, I'm not familiar with any cases dealing with res judicata or the single refiling rule in particular with respect to how it applies in nuisance or trespass cases, but I contend that a trespass on a Thursday is different than a trespass on a Friday, and the plaintiff would be entitled to bring an action on both of those and not be barred by the single refiling. What effect does the Flessner case have on this proceedings? So Flessner is the Supreme Court's decision from 1991, I believe, that construed – that basically came up with the single refiling rule. So we are conceding for purposes of this argument that Flessner is the controlling authority on how the single refiling – how Section 13, 2-17 operates, which is that you have – you can file once – you can just – So I don't think there's any dispute. The – my personal feelings on the wisdom of that decision are not really relevant to this thing, but the – I don't think either side can see that the single refiling rule is the operative rule here, and that's the Flessner Court's ruling on that. You brought up earlier on the acceleration issue, and that's, I think, an important point, and I think the defendant doesn't make any distinction on any of the other arguments of whether or not the plaintiff has the right to change the default. It hangs – she hangs her hat on the sole fact that this case is different because plaintiff elected to accelerate the loan, which means that everything – all cases are the same going forward. But what I stress is that what the plaintiff fails to – sorry, what the defendant fails to acknowledge is that the dismissal of the foreclosure operates at the deceleration level. No Illinois case on point. I've cited a number of Florida decisions where this issue has been hotly litigated for the last 10 years in the context of statute of limitations. But the – you will find the residue, I suppose, or echoes of this provision in both the Illinois Mortgage Foreclosure Act as well as the Standard Mortgage 19, which says that after acceleration, the case can be effectively deaccelerated by making – by reinstating the loan. And you have – in the Mortgage Foreclosure Act, you have 90 days to do that. So it's not like – I think from the defendant's position, they are – once it's accelerated, that's it. It can never be deaccelerated. That's not the case. Was – there was a notice of acceleration, but was there an actual acceleration in this case? So, Judge, I contend that – and I think, again, the defendant would agree that the filing of the lawsuit operates to accelerate the loan. If there wasn't a formal letter prior to that, the – the filing of the lawsuit accelerates the loan. And the flip side of that is that the dismissal of the lawsuit deaccelerates the loan. So what happens when a lawsuit of foreclosure action is dismissed and the plaintiff wants to refile it again? It has to send the notice out saying you're in default, here's how much you owe. If you don't pay it, we're going to accelerate the loan. If they don't pay it, we file a lawsuit. And the Illinois Mortgage Foreclosure Act still gives them 90 days to reinstate the loan, even though it's been accelerated. So accelerated is not – acceleration is not locked in stone, as the defendant would have you believe. And how do you establish deacceleration? By the dismissal of the case. No additional notices required? No additional notices. Again, this issue was – no Illinois decision on point. This issue was contested in Florida in the Illinois – the Florida Supreme Court on the very same issue. It said that the dismissal of the lawsuit is self-executed. Well, if it isn't decelerated, then does that not mean that even though the suit is dismissed, all the payments are accelerated? And if they don't make them all within the next month, then you can sue again for all the payments? Yeah, Judge. I mean, again, but for the single – Or do you have 30 years to sue for the accelerated amount? Oh, yeah. You can sue – well, you can – so – may I finish? Sure. So leaving aside the statute of limitations on a mortgage foreclosure action of 10 years, you can – you can – there's nothing requiring the mortgagee to sue once the default occurs. Ten years relates to the date of the accelerated breach. Yes, the accelerated breach. Right. So that is that. I didn't get an opportunity to discuss the reinstatement of the 2000. Well, let me ask a question on that regard. I think the order said with right to refile or something of that nature. Right to reinstate. Right to reinstate. Thank you. Did you ask for that? Did you in any way ask to reinstate? Yes, Judge. At the – when? In the – it was after the dismissal of the 2017 action. I don't recall the exact date. But by filing the third complaint. The fourth. No, the third. Because the right to reinstate language was in the second. Correct. When you filed the third action with identical dates, identical circumstances, identical parties, the acceleration, didn't you essentially reinstate? Well, Judge, again, the Supreme Court recently in the Richter v. Deere Farms case said that reinstatement and refiling are distinct things. They are completely different. Under 2-1009 in the voluntary dismissal rule, there's no limitations on when. But when they're the same exact transactional facts. They are, Judge, yes. They are. They're the same facts. But, again, I would say that there was nothing under the law that I found, other than prejudice, is the only case that I found where that would put any sort of limitation or restriction on the right to reinstate where leave had been given in the dismissal. And, again, I think the trial court was very clear to say if there's any prejudice here, it's on the Bank of New York's part. Well, then why at the time that you filed the third complaint didn't you exercise your right to reinstate? Are you asking us why we didn't do that? Right. Judge, I don't know. I wasn't handling the case then. But I will say that my guess is that these defenses, that motions to dismiss foreclosure actions under the single refiling rule are sort of a recent vintage. I've been practicing in this area for 25 years. These issues have just started to come up in the past 25 years. So I think what was happening, that mortgage lenders, for various reasons, work-outs, bankruptcies, reinstatements, loan modifications, forbearance agreements, or just transfer of servicing rights were voluntarily dismissed in the cases. Well, I haven't seen, all right, I've seen all of the other things that you mentioned until you got to a change of, what did you say? Change of loan servicers. Okay. Why would that be? That's not a change. That's not a transactional change here. No, but again, if the plaintiff is in the plaintiff's suit and the plaintiff has, you know, it's got okay evidence, which is records from a prior servicer, or it's got its own records, it's our position that it is entitled to proceed on the best case it has. If it has good evidence versus okay evidence, why fight it? You can, you know, in this case, the 2017 action, if it were allowed to go forward, it would be based solely on the current servicer's records. It would not have to rely, and all the hearsay problems attended with that, on the records of a prior servicer. So on 1, 2, and 3, the servicer records were just okay or not existent? Well, they were created by somebody else. So there's a business record exception as to whether or not the current servicer could introduce those into evidence based on the fact they were created by someone else. Whereas in the most recent action, 2017, those records were created by the current servicer who could testify without having any hearsay issues, saying these are our records, our records show we haven't gotten a payment since April of 2013. It couldn't say that with respect to the November of 2010 payment because it wasn't serviced to the public. If you have any questions, I'll be happy to answer them. You'll have an opportunity to make rebuttals, sir. Thank you. Thank you. Mr. Wiley, you may proceed. Thank you. Hey, police and court. Good morning, Your Honors. Good morning, counsel. My name is Luke Wiley. I'm an attorney. I represent the defendant, Appel Lee, in today's consolidated appeals, Jamie Dubervet. Mrs. Dubervet has been sued four times in the last nine years for foreclosure. And all four cases arise out of the exact same set of operative facts. Well, there's one. I mean, he's alleging there's one that's different. And it's their choice because this is a series of payments that should be made as opposed to this is a single contract where once it's breached, it's breached. The counsel relies on an installment theory, Your Honor. One of the cases he cited to Brown v. Charleston Group, it was a commercial sales installment contract. It wasn't a mortgage. There was no acceleration provision. So that case is factually distinguishable. There's not an election of remedies for the lender in that contract or analyzed in that case. The acceleration provision is important and it's key. It is an election provision in the contract, a contract that the lender drafts, a contract that the homeowner doesn't get to decide whether they sign it or not. And what that acceleration provision says, that once you've fallen behind enough on your monthly mortgage payments, we don't have to continue to accept partial payments. We don't have to continue to accept monthly payments that keep you below being current on this loan. So we're going to follow these very specific instructions in this provision, in the contract. And if we send you this letter and we follow these instructions, and we've properly accelerated, we've elected to accelerate, you have 30 days to pay the entire balance, do me knowing. And if you don't, we get to proceed and sue you for foreclosure. So that's what happened in 2011. Counsel mentioned the last date. 2011 case alleged in October, 2010 default date. And they prosecuted that case for 15 months. And then they voluntarily dismissed that case. And then they, because of the single refiling rule, which is a savings provision and gives a plaintiff the ability to voluntarily dismiss a case and then refile either within a year or the statute of limitations, whichever is greater, that's why they got to file their second case. And then they prosecuted that case for a year. And then they decided, we want to voluntarily dismiss that. Well, that's it under the single refiling rule. You've had your two bites at the apple. The Illinois Supreme Court makes clear that you have two bites. The statutory scheme doesn't allow three. Counsel also talked about the Cobo case. Illinois Supreme Court v. Midwest Bank v. Cobo. That case is important because first it affirms that the transactional test is what the Illinois Supreme Court's use for res judicata analysis. Counsel's office actually submitted and filed amicus curiae briefs on behalf of the lender in that case, putting forth all of these arguments that are in the briefs before Your Honors, putting forth all of the out-of-state arguments from different jurisdictions with different statutes and different applicable rules, different statutes and limitations. And the Cobo court decided not to apply any of those rules or standards and continued to do, in fact, what it's been doing even before Flesner. Flesner was the Supreme Court. I'm kind of in awe because I'm not aware that issues raised in an amicus brief would be anything other than judicial dicta at best if it was responded to and addressed to the amicus as opposed to one of the parties. I'm not aware that a party is, whatever an amicus does, is forced upon, preempts, and controls what a party may argue. No, Your Honor. Well, then, the fact that the court doesn't address issues raised by an amicus, you implied that the failure to respond would be in the negative. And the point is, I submit to you that maybe the failure to respond is a failure to respond and we don't impute anything by it. Is that reasonable? That's reasonable, Your Honor. Thank you. While we're at this pause, counsel's argument on acceleration is it's accelerated, but then by the dismissal it is automatically taken off the table. It's decelerated. There's no case law in Illinois that says that that's what happens. The word deceleration or deacceleration is not found in the mortgage. The acceleration provision is pretty specific. It has instructions laid out about how to elect and enforce that provision. And it doesn't say that if you choose to dismiss your case for any reason, that it's up to you, you can dismiss your case and then you can refile. That's the loan's been deaccelerated and you can choose to reaccelerate again. That's not what the mortgage says. Does the mortgage provide that acceleration is based upon default by the mortgagor? Yes. Then it would seem to me that it would be most efficacious for a mortgagee to file a lawsuit if, in fact, the filing of the lawsuit accelerates it. It would then create a situation where the mortgage is accelerated, despite the fact that there's a default by the mortgagor. And if it supposedly lasts forever, it means that supposedly the mortgagor can't resolve or remediate or terminate the acceleration under any circumstance because, based upon your logic, it is a given that it is forever. Your Honor, I know that that's not the case. I represent homeowners all the time who are able to disturb that acceleration because they're either able to get a loan modification agreement or they're able to come up with funds to reinstate the loan, or they file a bankruptcy where they're able to make payments that contribute towards the loan, or they make any payments whatsoever to disturb the deal. The point is, is that your argument seems to be sometimes it's a sword and sometimes it's a shield? No, Your Honor. But it's an election for the creditor. And Illinois case law says this is for the creditor's benefit. This is their ability to enforce the instrument in calling the entire debt now. But if they dismiss that action, aren't they giving up that right at this time or at that time? I don't know any statutory construction or any specific language in the contract that says that's what happens. Well, what does the dismissal mean? It means that they're no longer pursuing the claim. And what the Illinois single refiling rule, which we're dealing with, says it doesn't matter why you dismiss your case. You took a voluntary dismissal. But once you do it more than once, it doesn't matter why you voluntarily dismiss. And in this case, no one's contesting. Nothing's changed in nine years. Nothing's changed. Except their decision to look at a different default date. Correct, Judge. And counsel mentioned that, well, we chose 2013 because that's the new servicer. But it's the same plaintiff. It's the same Bank of New York Mellon. Isn't it their business records that are at issue? But they have a duty to prove the case. And if they cannot prove the case, why would they pursue it? Well, the Illinois mortgage foreclosure law gives servicers who change and debt collectors who change the ability to incorporate prior servicers' business records. They provide that. It's statutorily provided in a form affidavit. It's the Illinois Supreme Court Rule 113, which says this is how you incorporate prior business records from prior servicers. So that argument and that rule, Rule 113, Illinois Supreme Court Rule 113, came out about six months after Bank of New York Mellon dismissed their second case. So they've always had the ability. They're enforcing a note in mortgage which was created by a prior entity. What if they determine there are no records that they can rely on to incorporate? Isn't that their obligation to prove their case? And if they can't rely on any records that may be out there, they don't have to incorporate them? But that's the distinction between the servicer and the plaintiff, which I do think is a red herring because the plaintiff has remained the same. That's the holder of the note and the mortgage, the right to enforce it. So because they've hired a new agent, I mean, because they've hired a new lawyer, does that change? No. They just have a new servicer, a new entity in the middle collecting the payments, or in this case, not collecting payments at all. Your syllogism is based upon an infamy, and the premise that you assume which you haven't stated is that for some reason the fact that the plaintiff or, pardon me, the mortgagor remains the same, that that somehow has an effect dilatorious insofar as the plaintiff is concerned, insofar as his ability to prove or disprove his case. And I don't see any connection between the fact that the plaintiff is the same individual, should relate whatsoever to the abilities to prove, because it could be, for instance, I'm thinking of a workman's comp case where the person claims they fell off a ladder and they dislocated their shoulder so badly they can't lift their two-pound chihuahua, okay, and they need workman's comp. Six months, a year, two years later, the insurance company files suit, and they dismiss it and they refile it. But this time they claim that they've got pictures, a video, of him, the insured, carrying around a 200-pound wolfhound. And so the fact that the plaintiff is the same doesn't mean that the proofs won't change, depending on what the circumstances are. And sometimes time, not only healing all wounds, may also heal all defective proofs. Respectfully, Your Honor, in a foreclosure case or in a collection case of any kind, the lender and the debtor are the key operative facts. And in the meantime, no payments have been made. That's the operative fact. Nothing's changed. Nothing's disturbed the default that's occurred over nine years ago. Counsel also discussed the case of the plaintiff. Counsel also discussed the case of Wells Fargo Bank v. Norris, and that was a case that was at issue in the trial court. And in that case, it's important. We have a 2008, 2010, 2012 case, diligently brought 1, 2, 3. The first case says you're in default, this is the principal balance, and this is what you're due for. In the second case, they voluntarily dismiss the first case. In the second case, they attach a loan modification agreement. They change the principal balance based on the changed terms of the modification agreement. You are now creating a new part of the contract that inherently changes the operative facts. That's what the court found in Wells Fargo Bank. So even though they filed that second case and attached a loan modification, and then the borrower later said, we actually didn't have a loan modification, that wasn't what we agreed to, and then the court gave Wells Fargo Bank leave to dismiss the case, and at that hearing they argued, are we going to be able to bring a new case? And the court said, new operative facts, change in operative facts between cases 1 and 3 in case number 2. So the trial court was correct in relying on that. Counsel thinks that it stands for the proposition that each individual installment payment is its own default. But in that case, there was a modification agreement. It inherently changed the terms, it changed the contract, brought it current. As to the second portion of the appeal, the second case, which involved Bank of New York Mountain's attempt to reinstate, vacate their voluntary dismissal of the second case and then reinstate that, the court did not abuse its discretion in determining that by filing a third case and then a fourth case, Bank of New York Mountain has effectively waived its right to reinstate the second case. The counsel's right that there isn't case law that puts a time limit on it. Well, the time here was 6 1⁄2 years in two subsequent cases. And if you're going to reserve your right to reinstate a case, then why file the third case? And then once that gets voluntarily dismissed, why not reinstate it then before you file a fourth case? Well, why isn't the third case the violation case if we're going to be talking about what's what? Because it's the same parties, same date, same amount. In that case, Judge, our office actually did file a 2619 motion to dismiss, based on the single refiling rule in Bank of New York Mountain, then voluntarily dismiss rather than the address of the issue then. They then filed a fourth case in 2017, and it's still going today. This is a case brought in equity, and it does not seem reasonable that a person cannot make payments and still possess certain rights to property that's secured by a mortgage to another person. I mean, mistakes may have been made, servicers may have changed, but how can we stand by and say the bank is not entitled to anything? Well, all I'm asking, Your Honor, may I have a perspective? Yes, please. All I'm asking is that there's a limitation on these lawsuits. So the idea that equity has failed because a bank has been told that you can't sue a fourth and fifth time on a foreclosure suit for the same default and the purpose behind these rules, res judicata principles, the single refiling rule, is that we want to prevent litigants from harassing one another, the public resources in having to litigate multiple refilings. At some point, enough is enough. You can't keep refiling and dismissing and refiling and dismissing. What is then their remedy to protect their interest? Just because they can't enforce the instrument doesn't mean that their debt isn't still secure. How is it? The lien is still recorded on title. There's been no determination that that has to be removed or released, so it exists and it stays. And maybe the parties are encouraged to work it out now because Bank of New York Mellon has exhausted its election of foreclosure suits. I don't know. But the idea that equity has failed, I think there's equitable principles in the rules that we're talking about today, and that is people shouldn't have to be sued over and over again because the claimant couldn't get it right. Well, they needed to prove it, and the fact that they felt they could not prove it under the date alleged doesn't necessarily mean they couldn't get it right. It just meant that they might have made a legal decision that they didn't want to be involved in sanctions, things of that. They wanted to be able to prove what the issue was. Why are they not entitled to do that? Your Honor, in the first case, they prosecuted it for 15 months. We filed an answer. There was a motion for summary judgment filed. Then they dismissed their case. Second case, answer filed, motion for summary judgment, briefs, and then they voluntarily dismissed their case. So the idea that they didn't have the opportunity to prove up the default, that's not true. They did have the opportunity. This is a 30-year mortgage? Three-year mortgage. Twelve payments per year? Yes, Your Honor. 360 payments over the life of the mortgage? Yes, Your Honor. And if one payment supposedly is prosecuted twice, then the other 359 payments are nugatory? Zed? Nil? Void? Under the single refiling rule, if there's no disruption in the operative facts, no. Well, didn't I give you 359 operative facts that were different than the one? But the acceleration provision goes back to the acceleration provision. The borrower doesn't have the right to say, I want to start making monthly payments again. You've already accelerated, the lender's already accelerated the debt. They've called it all in. Any other questions? I'm sorry. Continue. All right. In finality, this Court should affirm the trial court's decisions, both in voluntarily dismissing the case under the single refiling rule and in refusing to reinstate the second case again after it filed two subsequent cases. Thank you. Mr. Noonan, you may proceed. Mr. Noonan, let me – I don't want to steal your thunder here, but this is a case in equity, and there is inequity on both sides. How can you keep filing this in what appears to me to be looking, you know, making a mistake the first three times? You litigated for what, let's say, two and a half, three-plus years, not you personally but the bank, maybe four years. You put this person through legal fees, I assume, briefs, litigation, summary judgment. How is just letting you file and keep filing equitable to the other side? Judge, that's a great question, and I'm glad you brought up equity. One thing that is not present in the record is why those suits were dismissed, and there are myriad reasons why those suits are dismissed. In the foreclosure crisis that began in 2008, there was government-imposed sanctions on mortgage lenders and servicers, privately-imposed sanctions by private investors on mortgage lenders to work with borrowers to save their homes. And when those happened, cases were routinely dismissed all the time, voluntarily dismissed. But we don't see any of those here. So we don't know. The record is silent as to why those actions were dismissed. But to assume that, to assume even I agree with you that if the plaintiff sort of strung the borrower along and would file, I mean, one would question why he would do that. But if it litigated the case for 15 months and then pulled the plug out and filed again and pulled the plug out to mess with them, you're right. That would be, I would say that's on the equitable way because this is a mortgage foreclosure proceeding, which is an equitable proceeding, and the courts are obliged to consider equity. And looking at that, I agree. That was sort of militating favor of the mortgagor or borrower in that case. But we have no evidence that that occurred at all. And, again, practically speaking, why would a lender do that to mess with the borrower? In the lender's perspective, if I think you indulge me for a moment, but from the lender's perspective, they want to finish that foreclosure as soon as possible. If they can get a loan work out or a modification or forbearance, great. If they can't, they want to get the title of the property, sell that asset and liquidate it and be done. That's what's driving them in this case. The borrowers, by contrast, they want to stay in their home, most of them. And they work with the lenders to try to do that. And oftentimes that takes place through the bankruptcy proceedings or I think all of which require a dismissal of the case. And it's that dismissal which kind of disrupts this mechanism to work out with borrowers. And I think the trial court in the Norris decision very aptly found that by allowing this argument to go forward that the lender only gets the two bite of the apple, and if I can quote from paragraph 12, once you default, if you bring a current and then they dismiss the action the next time in ellipses, even if that family wants to stay in their home and can later bring a current, they say, no, no. We only get one bite of the apple, so we have to complete the foreclosure. You're going to lose your house. We have to put up foreclosure. You can't be in state. Is that really equity what we want to have happen, that the lenders, okay, we cannot work with you anymore because we cannot dismiss the case? And that's what really effectively what the defendant is saying here. They're saying you can't do it, otherwise we get a free house. So are you going to gamble with that, lender? I don't think that's realistic. That's not how things happen in the foreclosure litigation space. If I can address the question of acceleration. Counsel said there's no authority for this concept of deacceleration. There is authority, and I've cited it in several places. There's a case from 1897, 125 years ago, that expressly says that the lender. Justice McLaren was elect. Okay, so you may remember this case. That expressly gives the lender the right to waive its deacceleration, its right to accelerate. It has the flip side of that right, which is to deaccelerate. In addition, counsel wants to convey the idea that once it's accelerated, that's it. It's done. The mortgage doesn't say that, and the Illinois Mortgage Foreclosure Act doesn't say that. In fact, it says after acceleration, the borrower can still make payments for a certain period of time. So it recognizes that post-acceleration, there's a right to reinstate the loan. So acceleration is in this line in the sand that counsel thinks it is. Right, 90 days. 90 days. I mean, there's a finite number, but it's a. . . But we have litigation going on for 15 months. That's more than 90 days. Right. Litigation going on for another year. That's more than 90 days. I don't know what the. . . I can't remember the time of the third, but they all exceeded 90 days. Yes. And so we have no evidence of payments. We have no evidence of anything that would change this default number of the interest. No. I completely concede that and agree with you, Your Honor. I think what I'm just getting at is the fact that the idea that once a loan is accelerated, nothing can change that is just not true. Both the common law, the statute, and the instrument itself recognizes that that can change. And we contend that the dismissal of the foreclosures effectively deaccelerated the loan, and the borrower could have brought a current at that time. In fact, I would go so far to say that if the. . . Judge, may I continue briefly? That in those cases, I can only imagine if the lender said, we are not accepting your reinstatement after they dismiss the first one because we reaccelerated the loan. That's fantasy land. That would never have happened. And, you know, I can only imagine that the court would. . . the trial court would have overruled that and made that a conceivable case. Thank you. If you have other cases on the call, there will be a short recess. Thank you.